UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JARUSELSKY DEJESUS APARICIO ALVAREZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN NORTHWEST ICE PROCESSING CENTER,<br><br>Respondent. | CASE NO. 2:26-cv-02599-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Jaruselsky Dejesus Aparicio Alvarez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II
## BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. # 6 at 1; Dkt. # 7-1. After applying for admission on June 9, 2024, Petitioner was detained and issued a Notice to Appear (NTA)

charging him as inadmissible Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). Dkt. # 6 at 1. Petitioner was then released on an Order of Recognizance. *Id.* A few months later, Petitioner filed an application for relief from removal. *Id.* at 2.

On February 6, 2025, Petitioner entered a plea in abeyance on a misdemeanor charge in the State of Utah for property damage. Dkt. # 9 at 3, 16; *see also id.* at 9-18. A year later, after compliance with court orders including a year with no violations and completing domestic violence counseling, on February 9, 2026, conviction was entered. Dkt. # 9 at 16-18; Dkt. # 6 at 2.

On June 25, 2026, Petitioner was detained by ICE in Idaho during an enforcement operation. Dkt. # 6 at 2; Dkt. # 7-1. During the operation, ICE officers observed a vehicle associated with an unrelated third party and conducted a field stop; Petitioner was a passenger in the vehicle. Dkt. # 7-1 at 3. ICE officers conducted a brief field investigation and determined Petitioner was in violation of immigration law. Dkt. # 7-1 at 3. He was then transferred to the Northwest Immigration Processing Center on June 30, 2026, where he remains.[1] Dkt. # 6 at 2.

## III

## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

[1] Respondents say Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. # 5 at 2-4. On reply, Petitioner argues he is detained pursuant to 8 U.S.C. § 1226(a). Dkt. # 9 at 3-4. But Respondents acknowledge that courts in this District have found similarly situated petitioners detained under § 1226(a). Dkt. # 5 at 2-4; *see Quitio v. Warden, Nothwest ICE Processing Ctr.*, 2026 WL 2168608, at *2 (W.D. Wash. July 28, 2026). This Court does the same and finds that Petitioner is detained under § 1226(a).

Petitioner says that his re-detention without the opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" Dkt. # 9 at 2-5; *see also* Dkt. # 10. The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2]

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process

A. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Petitioner has a liberty interest in being free from detention. *See* Dkt. # 9 at 4; *see also* Dkt. # 11 at 2 (government acknowledging Petitioner's liberty interest). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same); *see also Kumar*, 2026 WL 668335, at *4 ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'").

The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the

---

challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). Petitioner was free from detention for about two years. Dkt. # 6 at 1-2. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthen his interest in being free from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

Finally, there is "no correlation between one's past criminal history and one's current interest in freedom." *Gomez-Lopez v. Hernandez*, 2026 WL 1660359, at *1 (W.D. Wash. June 9, 2026); *see Fiston v. Bondi*, 2026 WL 926064, at *3 (W.D. Wash. Apr. 6, 2026) (finding the first *Mathews* factor in petitioner's favor regardless of criminal arrest); *Awa v. Noem*, 2026 WL 943593, at *1 (W.D. Wash. Apr. 8, 2026) (finding the first *Mathews* factor in petitioner's favor regardless of criminal conviction).

In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner.

B. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, as Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard, the risk of an erroneous deprivation of Petitioner's liberty interest is high. *See* Dkt. # 9 at 4.

Respondents say Petitioner's misdemeanor criminal conviction in February 2026 was the reason for his re-detention, which "cannot reasonably be described as pretextual." Dkt. # 11 at 3; *see also* Dkt. # 5 at 6-8. But the record shows otherwise. Petitioner's plea in abeyance was entered on February 9, 2026. Dkt. # 6 at 2; *see also* Dkt. # 9 at 9-18. Four months later, Petitioner was encountered by ICE, in a different state than the state of conviction, during a field operation where officers observed and stopped a vehicle associated with a third party. Dkt. # 7-1 at 3. Petitioner was not engaging in any unlawful behavior; he happened to be a passenger of that vehicle. *See id.* What the record shows is that upon Petitioner being identified, ICE conducted a "brief field investigation and determined [he] was in violation of immigration law." *Id.* ICE ran a records check only after Petitioner was stopped. *See id.* He did not have any outstanding warrant. Dkt. # 7-1 at 4. Even once ICE was aware of Petitioner's criminal history, it is unclear from the record if this factored into their decision to detain Petitioner. *See generally* Dkt. # 7-1 (citing Petitioner's "violation of immigration law" as the basis for detention). There is no indication in the record that ICE revoked Petitioner's OREC or sought to detain him post-conviction. *See generally* Dkt. ## 6, 7. The record shows that ICE was conducting immigration enforcement on a separate target or doing random vehicle stops; it does not indicate that ICE sought to revoke Petitioner's OREC and detain him based on his criminal conviction. *See Pablo v. ICE Field Off. Dir.*, 2026 WL 2098018, at *4 (finding Petitioner's arrest and re-detention

pretextual "[o]n its face" where agents were conducting enforcement on a separate target, petitioner was only a passenger in the vehicle, petitioner's criminal history was only discovered after the stop, and petitioner did not have an outstanding warrant or NTA).

Petitioner's criminal history may be relevant to immigration enforcement, but it "certainly does not eliminate his right to due process." *Pablo*, 2026 WL 2098018, at *4 (W.D. Wash. July 21, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1322) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). And where, as here, the criminal conviction appears pretextual, it cannot serve as the sole basis for arrest. *See E.A. T.-B.*, 795 F. Supp. 3d at 1322 (granting habeas relief where the Government's reason for re-arresting petitioner was "mere pretext").

"[T]he central issue here is the process by which re-detention occurred, not whether it was warranted." *Gill*, 2026 WL 686134, at *3. Petitioner says no procedures were used, the record shows the same, and Respondents do not dispute this claim or make any showing to the contrary.[3] Dkt. # 9 at 4-5; *see generally* Dkt. # 6, 7. The second factor favors Petitioner.

C. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents say that "the government clearly has a strong interest in preventing aliens from remain[ing] in the United States in violation of our law." Dkt. # 11 at 5 (quoting *Rodriguez*

[3] Petitioner has also not been provided a *post*-deprivation hearing in violation of § 1226(a). *See* Dkt. ## 6, 7.

*Diaz*, 53 F.4th at 1208); *see also* Dkt. # 5 at 8-9. It is unclear to the Court how detaining Petitioner without process, when he was already released on an OREC and had no upcoming immigration proceedings, furthers this goal. *See* Dkt. # 1 at 29; *see also* Dkt. # 7-2 at 2. Respondents' other position–that the government has an interest in enforcing compliance with conditions of release—is more applicable; but again, where the arrest was pretextual, the Government's interest in enforcing compliance seems to be merely a post-hoc rationale for Petitioner's re-detention.

The Court acknowledges that the government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. But Respondents do not claim Petitioner had an upcoming appearance, nor does the record indicate Petitioner would be a flight risk for any such upcoming proceeding. *See generally* Dkt. # 6, 7. Respondents do not claim Petitioner is a danger to the community. *See generally* Dkt. # 5. Petitioner was released from custody by local authorities and followed the state court's conditions for his plea in abeyance. *See* Dkt. # 9 at 9-18. Respondents have not explained what interest the Government has in detaining him anyway nor does the Court see one. This *Mathews* factor also favors Petitioner. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 (if the reason for detention "occurred months before they were acted upon," that "undermines the suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be unsurmountable").

* * *

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a

preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief.[4] 28 U.S.C. § 2241(c).

As to the remedy, the Court finds that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original). As other courts in this District and Circuit have found, a post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (*quoting Domingo v. Kaiser*, No. 25-cv-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4. Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

[4] Petitioner also says his detention is unlawful because it has become prolonged and because he has received inadequate medical care. *See* Dkt. # 1 at 6-7. Because relief is granted based on procedural due process, the Court need not consider these claims.

## IV

## Conclusion

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

The Court ADVISES the Clerk that this order resolves Dkt. ## 5 and 11. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of September, 2026.

John H. Chun

John H. Chun
United States District Judge